## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **BARBARA HEWITT**,<br>7228 Widmer Road<br>Shawnee, KS  66216,<br><br>        **Plaintiff,**<br><br>v.<br><br>**ALLIED BUSINESS SOLUTIONS, LLC**,<br>c/o Registered Agent Jacki M. Alsup<br>20265 Peppertree Lane<br>Edgerton, KS 66021,<br><br>**ALLIED BUSINESS SOLUTIONS, INC.**,<br>c/o Registered Agent Larry Alsup<br>314 E. Main Street<br>Gardner, KS 66030,<br><br>and,<br><br>**LARRY S. ALSUP**,<br>20265 Peppertree Lane<br>Edgerton, KS 66021,<br><br>        **Defendants.** | **Case No. 2:19-cv-2012**<br><br><br><br>**JURY DEMANDED** |

## COMPLAINT

Plaintiff Barbara Hewitt ("Plaintiff" or "Ms. Hewitt"), for her Complaint against Defendants Allied Business Solutions, LLC, Allied Business Solutions, Inc. (collectively "Allied") and Larry Alsup (collectively "Defendants") states as follows:

1.      Allied is a company who specializes "in telecommunication billing solutions" and provides "expert advice in all aspects of telecommunication billing." *See* https://www.alliedbsi.com/about-allied-business-solutions-inc/

2.      To conduct its business, Allied retains employees to sell these services.

3.      Plaintiff Ms. Hewitt was hired by Allied's President, Defendant Alsup, as an independent contractor to sell Allied's services.

4.      Defendants' deliberate failure to classify Ms. Hewitt as an employee and to pay Ms. Hewitt her earned wages, including minimum wage compensation, violates the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et. seq.*, as well as Kansas state laws.

## PARTIES

5.      Plaintiff Barbara Hewitt is a resident of Kansas who resides at 7228 Widmer Road, Shawnee, Johnson County, Kansas.  Ms. Hewitt worked for Defendants from approximately March 2013 to 2018 as a sales representative.  Attached as **Exhibit 1** is Ms. Hewitt's consent to join form pursuant to 29 U.S.C. § 216(b).

6.      Defendant Allied Business Solutions, LLC ("Allied, LLC") is a limited liability company registered to do business in the state of Kansas.  Allied, LLC's principal place of business is in Kansas and, upon information and belief, all of its members reside in Kansas. Allied, LLC may be served through its registered agent, Jacki Alsup, 20265 Peppertree Lane, Edgerton, Johnson County, Kansas.

7.      Defendant Allied Business Solutions, Inc. ("Allied, Inc.") is a Missouri corporation with, upon information and belief, its principal place of business in Kansas.  Allied, Inc. may be served through its registered agent, Larry Alsup, 314 E. Main Street, Gardner, Johnson County, Kansas.

8.      Defendant Larry Alsup ("Mr. Alsup") is a resident of Kansas who resides at 20265 Peppertree Lane, Edgerton, Johnson County, Kansas.

9.      At all relevant times, Defendants have been an "employer" within the meaning of the FLSA.  At all relevant times, Defendants have employed "employee[s]," including Plaintiff. At all relevant times, Plaintiff was engaged in commerce and/or worked for Defendants.

2

## JURISDICTION AND VENUE

10.    This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA, 29 U.S.C. § 201 *et seq.*

11.    This Court has supplemental jurisdiction for the state law claims in that these claims are part of the same case and controversy as the FLSA claims, the state and federal claims derive from a common nucleus of operative facts, and exercising supplemental jurisdiction would be in the interests of judicial economy, convenience, fairness and comity.

12.    The United States District Court for the District of Kansas has personal jurisdiction over Defendants as they are residents of this state and/or have their principal place of business in this state, including regularly conducting business within this District.

13.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) inasmuch as Defendants conduct business and can be found in this District, and the causes of action set forth herein have arisen and occurred in this District.

## FACTUAL ALLEGATIONS

14.    Allied's primary business is to assist companies with "controlling communication costs" by providing auditing services, including "diligently examining and verifying all facets of [a company's] billing, . . . identifying telecom billing errors, managing disputes, and obtaining refunds for corrections . . .."  https://www.alliedbsi.com/

15.    Allied Business Solutions, LLC and Allied Business Solutions, Inc. (collectively referred to as "Allied" herein) upon information and belief operate as alter-egos and are for all practical purposes the same entity.  Both entities have the same officers and directors (Defendant Alsup, and Jacki Alsup), and operate from the same business addresses.  Upon information and belief, finances of the two entities are intertwined, and the legal formalities purporting to maintain separate entities have not been observed.  For example, while Ms. Hewitt was purportedly hired

3

by Allied Business Solutions, LLC, upon information and belief the email address provided to her by Defendants was an Allied Business Solutions, Inc. email address, and the website operated by Allied for its customers lists Allied Business Solutions, Inc. as the entity.

16.     Defendant Mr. Alsup is the President of Allied, owns and manages Allied, and possesses actual control over the operations of Allied, including the terms and conditions of employment complained of herein.

17.     To sell its services, Defendants employ sales representatives, many of whom were treated as employees.

18.     Ms. Hewitt was retained as a sales representative by Defendants in approximately March 2013.   A true and correct copy of the Independent Sales Representative Agreement ("Agreement") is attached hereto as **Exhibit 2**.

19.     Ms. Hewitt had all communications regarding her Agreement, and the terms and conditions of her employment, with Mr. Alsup.

20.     During the term of the Agreement, Defendants controlled both the means and methods that Ms. Hewitt used to perform her work.   Defendants provided Ms. Hewitt with materials and office supplies from Allied's office to perform her job, as well as remote access into Allied's computer system, and an email address.

21.     Defendants provided Ms. Hewitt with business cards indicating that she worked for Allied.

22.     During the relevant period, Ms. Hewitt worked solely for the benefit of Defendants to the exclusion of any other business relationship.   Defendants maintained control, oversight and direction over Ms. Hewitt's work.

23.     To perform her job, Ms. Hewitt customarily and regularly worked from her home calling on prospective customers to sell them Allied's auditing services.

24.     Ms. Hewitt did not have the ability to make decisions about the sales, and could not finalize a sale or a contract without Mr. Alsup's involvement and approval.

25.     Ms. Hewitt met either in person or via phone on a weekly basis with Mr. Alsup.

26.     Once a customer signed up for Allied's services, Ms. Hewitt was to be paid a percentage of the savings realized from the audit by the customer for the life of the customer's contract with Allied.  *See generally* Agreement at **Ex. 2**.

27.     In approximately August 2017, Ms. Hewitt realized that Defendants had failed to pay her over $77,000 commissions in violation of the Agreement.  Specifically, Ms. Hewitt discovered that Mr. Alsup had directed the office administrator to change the name of the sales representative on her accounts to a house account.

28.     Ms. Hewitt confronted Defendants about this breach and requested her commissions plus interest.

29.     On or about October 2, 2017, Defendants agreed to pay Ms. Hewitt $80,000 to cover these commissions plus a reduced interest rate.  In addition, the parties agreed that Ms. Hewitt would be able to review the files/invoices to ensure accuracy in the commission payments, assist the office manager in ensuring that all of the commissioned items Ms. Hewitt sold listed her as the sales manager, and that all future commissions would continue per the terms of the Agreement.

30.     In the fall of 2017, Ms. Hewitt received an $80,000 check for back pay and interest, and an additional check that included amounts for August and September 2017 commissions.

31.     Following the receipt of these payments, Ms. Hewitt attempted to schedule a time to meet with the office manager to correct the client accounts.  Defendants refused to permit this meeting to occur.

32.     Again, in approximately November 2017, Defendants failed to pay Ms. Hewitt her commissions due under the Agreement.

33.     In approximately December 2017, Ms. Hewitt again reached out about payment for her October 2017 commissions.

34.     Defendants advised Ms. Hewitt that she was not entitled to any commissions as the clients had not allegedly paid and there were chargebacks.  Defendants advised Ms. Hewitt that she should contact her clients if she wanted to get payments.

35.     Ms. Hewitt made calls to her clients per Defendants' request throughout December 2017 through the beginning of 2018.

36.     On or about, February 23, 2018, Defendants, through their attorneys, sent Ms. Hewitt a letter advising her that she had breached the Agreement by contacting her customers and, as a  result, they were no longer going to pay her per the terms of the Agreement.

37.     As a result of Defendants' wrongful breaches, Ms. Hewitt has been denied minimum wage for her work from approximately October 2017 through March 2018, as well as denied her commissions due under the Agreement.

## COUNT I – VIOLATION OF THE FAIR LABOR STANDARDS ACT
### (Claim Against All Defendants)

38.     Plaintiff re-asserts and re-alleges the allegations set forth above.

39.     At all times material herein, Plaintiff has been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

40.     The FLSA regulates, among other things, the payment of minimum wage and overtime by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a)(1).

41.     The FLSA requires each covered employer, such as Defendants, to compensate all non-exempt employees at the federal minimum wage for services performed and to compensate them at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a work week.

42.     Defendants are subject to the minimum wage and overtime pay requirements of the FLSA because it is an enterprise engaged in interstate commerce and its employees are engaged in commerce.

43.     At all relevant times, Defendants were an employer of Plaintiff and Plaintiff was an employee of Defendants, not an independent contractor.

44.     Defendants violated the FLSA by misclassifying Plaintiff as an independent contractor, instead of an employee, and failing to pay minimum wage and overtime for all hours worked.

45.     As set forth above, during the term of Plaintiff and Defendants' employment relationship, Defendants controlled both the means and methods by which Plaintiff was to complete her tasks.

46.     Plaintiff worked solely for the benefit of Defendants and to the exclusion of other business relationships.

47.     Plaintiff used Defendants' supplies and computer systems to complete the tasks and was supplied business cards reflecting that she worked for Allied.

48.     During the term of the Agreement, Plaintiff did not have any profit or loss opportunities and was completely dependent upon Defendants for her compensation.

49.     The services that Plaintiff provided were an integral part of Defendants' business.

50.     Section 13 of the FLSA, codified at 29 U.S.C. § 213, exempts certain categories of employees from overtime pay obligations. None of the FLSA exemptions apply to Plaintiff.

51.     Plaintiff is entitled to damages equal to the mandated minimum wage pay within the three years preceding the filing of this Complaint, plus periods of equitable tolling, because Defendants acted willfully and knew, or showed reckless disregard of whether, their conduct was prohibited by the FLSA.

52.     Defendants have acted neither in good faith nor with reasonable grounds to believe that its actions and omissions were not a violation of the FLSA, and as a result thereof, Plaintiff is entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid minimum wage pay described pursuant to Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b). Alternatively, should the Court find that Defendants did not act willfully in failing to pay minimum wage pay, Plaintiff is entitled to an award of prejudgment interest at the applicable legal rate.

WHEREFORE, Plaintiff Ms. Hewitt respectfully requests that the Court enter judgment in her favor and against Defendants for unpaid wages, together with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action, and any other and further relief as the Court deems fair and equitable.

## COUNT II – IMPROPER MISCLASSIFICATION
**(Claim Against All Defendants)**

53.     Plaintiff re-asserts and re-alleges the allegations set forth above.

54.     As set forth above, during the term of Plaintiff and Defendants' employment relationship, Defendants controlled both the means and methods by which Plaintiff was to complete her tasks.

55.     Plaintiff worked solely for the benefit of Defendants and to the exclusion of other business relationships.

56.     Plaintiff used Defendants' supplies and computer systems to complete the tasks and was supplied business cards reflecting that she worked for Allied.

57.     During the term of the Agreement, Plaintiff did not have any profit or loss opportunities and was completely dependent upon Defendants for her compensation.

58.     The services that Plaintiff provided were an integral part of Defendants' business.

59.     Defendants knew or should have known that Ms. Hewitt was an employee, and not an independent contractor, as it treated other sales representatives as employees.

60.     As a result of Defendants' improper misclassification of Plaintiff as an independent contractor, Plaintiff suffered damages in that she has had to pay self-employment taxes and did not receive the employment benefits offered to other employees.

WHEREFORE, Plaintiff Ms. Hewitt respectfully requests that the Court enter judgment in her favor and against Defendants, issues a finding that Defendants misclassified Plaintiff as an independent contractor, and award damages as a result of such misclassification, together with an additional amount as pre-judgment and post-judgment interest, costs of this action, and any other and further relief as the Court deems fair and equitable.

## COUNT III – BREACH OF CONTRACT
### (Claim Against the Allied Defendants)

61.     Plaintiff re-asserts and re-alleges the allegations set forth above.

62.     On or about March 4, 2013, Ms. Hewitt entered into an Agreement with Allied.

63.     In exchange for her work procuring customers, Ms. Hewitt was to receive commissions at a rate of 20% of the collected revenue for the life of the contract with the customer. *See* **Ex. 2**, at Exhibit A-1.

64.     Ms. Hewitt procured customers for Allied and was entitled to receive commissions for these sales.

65.     In approximately November 2017, Allied refused to continue to make commission payments to Ms. Hewitt despite demand.

66.     The Agreement is a valid and binding contract between Ms. Hewitt and Allied and is supported by adequate consideration.

67.     Ms. Hewitt has fulfilled all of her duties, responsibilities and obligations and met all conditions precedent under this Agreement.

68.     Allied's refusal to pay Ms. Hewitt her commissions is a breach of the Agreement.

69.     As a result of the breach, Ms. Hewitt has been damaged and continues to be damaged.  The amount of the damages will be fully known once an accounting is done on the revenue collected by Allied from the customers.

WHEREFORE, Plaintiff Ms. Hewitt respectfully requests that the Court enter judgment in her favor and against Defendants Allied Business Solutions, LLC and Allied Business Solutions, Inc., for compensatory damages in an amount no less than $25,000, for an Order specifically instructing Defendants to pay future commissions, for pre- and post-judgment interest as allowed

by law, for Plaintiff's attorneys fees, costs and expenses of this action, and for any other and further relief the Court deems just and proper.

## <u>COUNT IV – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING</u>
### (Claim Against the Allied Defendants)

70.     Plaintiff re-asserts and re-alleges the allegations set forth above.

71.     As set forth above, Ms. Hewitt and Allied entered into an Agreement whereby Ms. Hewitt would sell Allied's services to prospective customers in exchange for a percentage of the collected revenue.

72.     Ms. Hewitt relied upon Defendants to act in good faith in maintaining accurate records regarding the accounts she had sold, as well as accurately disclosing the collected revenue per account so that her commissions could be collected.

73.     Ms. Hewitt also relied upon Defendants to act in good faith in paying her the agreed-upon commissions.

74.     Ms. Hewitt further relied in good-faith upon Defendants' request for her to contact her customers regarding payment.

75.     Defendants have breached its covenant of good faith and fair dealing, including but not limited to, that Defendants:

a.     failed to accurately maintain records regarding the accounts Ms. Hewitt sold;

b.     failed to disclose the revenue collected on the accounts Ms. Hewitt sold;

c.     failed to pay her all of her commissions; and

d.     claimed that she breached the Agreement by contacting customers even though Defendants had asked her to contact customers.

76.     As a result of this breach, Ms. Hewitt has been damaged, and continues to be damaged.

WHEREFORE, Plaintiff Ms. Hewitt respectfully requests that the Court enter judgment in her favor and against Defendants Allied Business Solutions, LLC and Allied Business Solutions, Inc., for compensatory damages, for an accounting of these accounts, for an Order specifically instructing Defendants to pay future commissions, for pre- and post-judgment interest as allowed by law, for Plaintiff's attorneys fees, costs and expenses of this action, and for any other and further relief the Court deems just and proper.

## COUNT V – FRAUD
### (Claim Against All Defendants)

77.     Plaintiff re-asserts and re-alleges the allegations set forth above.

78.     In the fall of 2017, Ms. Hewitt approached Defendants about Defendants' failure to pay her all commissions owed.

79.     Ms. Hewitt believed that the parties negotiated a resolution to this dispute wherein Defendants would pay Ms. Hewitt the back-commissions, as well as a reduced amount in interest.

80.     In exchange for Ms. Hewitt agreeing not to seek her full damages, Defendants also told Ms. Hewitt that she would be permitted to inspect the invoicing, review the customer accounts to ensure that she was listed as the sales representative on her accounts, and that all future commissions would be paid pursuant to the terms of the Agreement.

81.     These representations to Ms. Hewitt were material to her decision to forgo all of the damages to which she was legally entitled, and to not pursue litigation over the improperly withheld commissions.

82.     Ms. Hewitt reasonably relied upon these statements of Mr. Alsup in reaching this settlement.

83.     However, Mr. Alsup's statements were false and he never intended to honor the agreement. Rather, he intended to fraudulently induce Ms. Hewitt into this settlement to deprive her of future benefits.

84.     As a result of the misrepresentations by Mr. Alsup, Plaintiff has been damaged in the amount of interest that she was legally entitled to seek as a result of Defendants' prior breach of the Agreement.

85.     Defendants' actions in falsely representing that if Ms. Hewitt agreed to less than her full damages she would be permitted to inspect the invoicing, review the customer accounts and receive her future commissions at the original agreed upon terms and rates, was intentional, willful and outrageous because of Defendants' evil motive and reckless indifference to the rights of others.  Accordingly, an award of punitive damages is warranted by Defendants' conduct.

WHEREFORE, Plaintiff Ms. Hewitt respectfully requests that the Court enter judgment in her favor and against Defendants for compensatory damages, punitive damages, for pre- and post-judgment interest as allowed by law, for Plaintiff's attorneys fees, costs and expenses of this action, or in the alternative rescission of the settlement, and for any other and further relief the Court deems just and proper.

## COUNT VI - DECLARATORY JUDGMENT
### (Claim Against the Allied Defendants)

86.     Plaintiff re-asserts and re-alleges the allegations set forth above.

87.     In approximately November 2017, Defendants failed to pay Ms. Hewitt commissions.

88.     In approximately, December 2017, Ms. Hewitt inquired as to why she had not received additional commissions under the Agreement.

89.    Ms. Hewitt was advised that the customers had not paid their bills.  Defendants then instructed Ms. Hewitt to contact these customers about their accounts.

90.    Ms. Hewitt contacted these customers about payment on these accounts.

91.    On or about, February 23, 2018, Ms. Hewitt was advised by Defendants' counsel that she had allegedly breached the Agreement by contacting customers.

92.    Pursuant to the terms of the Agreement, Ms. Hewitt is only prohibited from contacting customers "for the purpose of soliciting or inducing them to terminate their business relationship with Allied." *See* **Ex. 2**, at ¶ 7(a).

93.    Ms. Hewitt has not solicited or induced Allied's customers to terminate their business relationship with Allied, and denies any such actions as they would be against her own economic interests.   Ms. Hewitt's contacts with Allied's customers regarding payment on accounts, at the request of Allied, is not a breach of the Agreement.

94.    A real and subsisting controversy exists between the parties concerning communications with Allied's customers and the impact on future commissions.

95.    Plaintiff has no adequate, alternative remedy.

WHEREFORE, Plaintiff Ms. Hewitt respectfully requests that the Court enter its declaratory judgment in her favor and against Defendants Allied Business Solutions, LLC and Allied Business Solutions, Inc., construing the Agreement as set forth herein, declaring that she is not in breach of the Agreement and that she is entitled to her future commissions under the Agreement and providing such other and further relief as the Court finds just and proper, together with the costs of this action.

## <u>COUNT VII- KANSAS WAGE PAYMENT ACT</u>
### (Claim Against All Defendants)

96.    Plaintiff re-asserts and re-alleges the allegations set forth above.

14

97.     Per the terms of Ms. Hewitt's agreement with Defendants, Ms. Hewitt was to receive monthly commissions at a rate of 20% of the collected revenue for the life of the contract with the customer.

98.     These payments were to continue even after Ms. Hewitt ceased working for Defendants.

99.     In approximately November 2017, Defendants stopped making commission payments to Ms. Hewitt.

100.    Ms. Hewitt is owed further commissions on accounts that she secured.

101.    Defendants have not paid Ms. Hewitt these commissions and have improperly withheld these wages.  Defendants have not withheld payment for these earned wages for any reason permitted by K.S.A. § 44-319.

102.    Defendants' failure to pay these earned wages is willful and unlawful. Accordingly, Ms. Hewitt is entitled to her earned commissions plus a penalty equal to 1% per day for each day that the wages remain unpaid.

WHEREFORE, Plaintiff Ms. Hewitt respectfully requests that the Court enter judgment in her favor and against Defendants in the amount of her earned but unpaid commissions, plus a penalty equal to one percent (1%) per day for each day the wages remain unpaid, for Plaintiff's attorneys' fees, costs and expenses, as well as any other and further relief as the Court finds just and proper.

## COUNT VIII - QUANTUM MERUIT
### (Claim Against All Defendants)

103.    Plaintiff re-asserts and re-alleges the allegations set forth above.

104.    Plaintiff conferred a benefit upon Defendants by working on their behalf without full compensation.

105.    Defendants had an appreciation or knowledge of the benefit conferred by Plaintiff.

106.    Defendants accepted and retained the benefit under such circumstances as to make it inequitable for Defendants to retain the benefit without payment of its value.

107.    Plaintiff was thereby damaged in an amount to be determined at trial.

WHEREFORE, Plaintiff Ms. Hewitt respectfully requests that the Court enter judgment in her favor and against Defendants and prays for: (1) compensatory damages; (2) pre-judgment and post-judgment interest; (3) costs and attorneys' fees; and (4) for such other and further relief as the Court shall deem just and proper.

### COUNT IX – CONVERSION
### (Claim Against All Defendants)

108.    Plaintiff re-asserts and re-alleges the allegations set forth above.

109.    The parties agreed that Plaintiff would be paid commissions on accounts that she sold based upon the revenue received by Defendants.

110.    Plaintiff sold customers Allied's services and is entitled to the commissions.

111.    Upon information and belief, Defendants are now falsely claiming that there is no revenue.

112.    Plaintiff is the rightful owner of her earned wages.

113.    By failing to pay Plaintiff her commissions, Defendants too possession of Plaintiff's property with the intent to exercise control over that property.

114.    Defendants thereby deprived Plaintiff of the right to possession in Plaintiff's property.

WHEREFORE Plaintiff Ms. Hewitt respectfully requests that the Court enter judgment in her favor and against Defendants and prays for: (1) compensatory damages; (2) pre-judgment and post-judgment interest; (3) costs; (4) punitive damages in amounts fair and just so as to

punish and deter Defendants; and (5) for such other and further relief as the Court shall deem just and proper.

## COUNT X – ACCOUNTING
### (Claim Against All Defendants)

115.    Plaintiff re-asserts and re-alleges the allegations set forth above.

116.    As set forth above, at all relevant times, Ms. Hewitt and the Defendants had an Agreement whereby Ms. Hewitt would sell Allied's services to prospective customers in exchange for a percentage of the collected revenue.

117.    The revenue collected from customers was at all times intended to be collected by Defendants for subsequent payments to both Ms. Hewitt (as commissions) and Defendants (as profits).

118.    Defendants acted as fiduciaries over these funds, and were required to maintain accurate and complete records of the funds collected.

119.    As is further discussed above, there are significant questions as to the accuracy, veracity, and completeness of the records kept by Defendants related to the sums paid by customers.

120.    An accounting of the sums paid by customers, and the disbursals of those sums as commissions and/or profits, is required to obtain a fair, accurate, and orderly determination of the sums owed to Ms. Hewitt.

WHEREFORE, Plaintiff Ms. Hewitt respectfully requests that the Court enter judgment in her favor and against Defendants for an accounting of these accounts and for an Order requiring Defendants to demonstrate a complete and accurate reflection of the sums received from customers and how those sums have been allocated, for Plaintiff's attorneys fees, costs and expenses of this action, and for any other and further relief the Court deems just and proper.

17

**JURY DEMAND**

Plaintiff demands a jury trial as to all claims and issues so triable.

**PLACE OF TRIAL**

Plaintiff designates Kansas City, Kansas as the place of trial.


Dated:  January 8, 2019                    Respectfully submitted,

                                           **CRIMMINS LAW FIRM LLC**


                                           By:  *s/ Virginia Stevens Crimmins*
                                               Virginia Stevens Crimmins, KS #20617
                                               Matthew R. Crimmins, KS #20707
                                               214 S. Spring Street
                                               Independence, Missouri 64050
                                               Telephone:  816-974-7220
                                               Facsimile:  855-974-7020
                                               v.crimmins@crimminslawfirm.com
                                               m.crimmins@crimminslawfirm.com

                                           **ATTORNEYS FOR PLAINTIFF**