UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Barbara Hewitt,

Plaintiff,

vs.

Allied Business Solutions LLC, et al.,

Defendants.          Case No. 2:19-cv-2012

## ANSWER

COMES NOW Allied Business Solutions LLC, Allied Business Solutions Inc. (collectively, "Allied"), and Larry S. Alsup, (Defendants herein) by and through their attorney, R. Scott Ryburn, Anderson & Byrd LLP, and hereby answer the plaintiff's complaint as follows, to-wit:

1.      Defendants deny each and every allegation not admitted herein.

2.      Defendants admit the allegation in paragraphs 1, 2 and 3.

3.      Defendants deny the allegations in paragraph 4.

4.      Defendants admit the allegations in paragraphs 5 and 6.

5.      Defendants deny the allegations in paragraph 7 that Allied Business Solutions Inc. operates with its principal place of business in Kansas.

6.      Defendants admit the allegations in paragraph 8.

7.      Defendants deny they are an employer within the meaning of FSLA and the allegations in paragraph 9 allege a legal conclusion, and therefore, defendant denies the allegations in paragraph 9.   Defendants admit it has other employees.

8.      Defendants admit the allegations in paragraphs 10, 11, 12 and 13.

9.      Defendants admit that they assist companies with controlling communications costs as alleged in paragraphs 14 and 15, but deny that Allied Business Solutions, LLC and Allied Business

Hewitt v. Allied Business Solutions
Case No. 2:19-cv-2012
**ANSWER AND COUNTERCLAIM**
Page 2
- - - - - - - - - - - - - - - - - - - - - - - -

Solutions Inc. are the alter-egos and are the same entity or that Allied Business Solutions Inc is on their website.  They admit they have the same officers and directors but deny the remaining allegations in paragraphs 14 and 15.

      10.    Defendants admit the allegations that Larry Alsup is the President of Allied and manages Allied, and denies the remainder of the allegations in paragraph 16.

      11.    Defendants deny that Barbara Hewitt was an employee, and therefore, denies the allegations in paragraph 17.

      12.    Defendants admit plaintiff was a sales representative of Allied Business Solutions LLC but deny the allegations in paragraph 18 that Exhibit 2 is the only Sales Agreement signed by the parties.

      13.    Defendants deny Barbara Hewitt was an employee and admit that she communicated with Larry Alsup regarding the allegation in paragraph 19.

      14.    Defendants deny the allegation in paragraph 20 that Defendants controlled both the means and methods that Ms. Hewitt used to perform her work.  Defendants admit the remaining allegation in paragraph 20.

      15.    Defendants admit the allegations in paragraph 21.

      16.    Defendants are without sufficient information to admit or deny the allegations in paragraph 22, and therefore, denies the same.

      17.    Defendants admit the allegations in paragraph 23.

      18.    Defendants deny the allegation in paragraph 24, 25, 26, 27 and 28.

      19.    Defendants admit plaintiff was paid $80,000.00 in 2017 for commissions which could

Hewitt v. Allied Business Solutions
Case No. 2:19-cv-2012
**ANSWER AND COUNTERCLAIM**
Page 3
- - - - - - - - - - - - - - - - - - - - - - - -

be reduced after a proper accounting, and deny the remaining allegations in paragraphs 29 and 30.

20.     Defendants deny the allegation in paragraph 31, 32 and 33.

21.     Defendants deny the allegations in paragraph 34 that they advised Ms. Hewitt that she should contact her clients if she wanted to get payments and admits the remaining allegations in paragraph 34.

22.     Defendants deny the allegation in paragraph 35.

23.     Defendants admit a letter was sent to Ms. Hewitt stating that she had breached the agreement with Allied, but deny the remaining allegations of paragraph 36.

24.     Defendants deny the allegations in paragraphs 37 and deny the allegations in paragraph 38 as previously denied.

25.     Defendants deny that plaintiff was an employee of Allied Business Solutions LLC and the statements in paragraph 39 ask for a legal conclusion, and therefore, defendants deny the allegations paragraph 39.

26.     Defendants deny that plaintiff was an employee of Allied Business Solutions LLC and the statements of paragraphs 40, 41 and 42 seek legal conclusions, and therefore, are denied.

27.     Defendants deny the allegations in paragraph 43, 44 and 45.

28.     Defendants are without sufficient knowledge to admit or deny the allegations in paragraph 46, and therefore, denies the same.

29.     Defendant admits that plaintiff used defendants' computer, but denies the remainder of the allegations in paragraph 47.

30.     Defendant is without sufficient knowledge to admit or deny the allegations in

Hewitt v. Allied Business Solutions
Case No. 2:19-cv-2012
**ANSWER AND COUNTERCLAIM**
Page 4
- - - - - - - - - - - - - - - - - - - - - - - - -

paragraph 48, and therefore, denies the same.

31.     Defendant denies the allegations in paragraphs 49, 50, 51 and 52.

32.     Defendant denies the allegations in paragraph 53 that have been previously denied.

33.     Defendant denies the allegations in paragraph 54 that defendant controlled the means and methods by which plaintiff was to complete her tasks.

34.     Defendants are without sufficient knowledge to admit or deny the allegations in paragraph 55, and therefore, denies the same.

35.     Defendants admit that plaintiff use defendants' supplies and supplied plaintiff with business cards, and deny remainder of the allegations in paragraph 56.

36.     Defendant is without sufficient knowledge to admit or deny the allegations in paragraph 57, and therefore, denies the same.

37.     Defendants deny the allegations in paragraph 58, 59 and 60 of plaintiff's petition.

38.     Defendants deny the allegations in paragraph 61 as previously denied.

39.     Defendants admits the allegations of 62.

40.     Defendants deny the allegations of paragraph 63 that plaintiff was to receive commissions for the "life of the contract," and admits the remainder of the allegations in paragraph 63.

41.     Defendants admit the allegations in paragraph 64.

42.     Defendants deny that Allied refused to make commission payments as alleged in paragraph 65.

43.     Defendants deny the allegations in paragraphs 66, 67, 68 and 69.

Hewitt v. Allied Business Solutions
Case No. 2:19-cv-2012
**ANSWER AND COUNTERCLAIM**
Page 5
- - - - - - - - - - - - - - - - - - - - - - - -

44.     Defendants deny the allegation in paragraph 70 as previously denied.

45.     Defendants admit the allegation in paragraph 71, 72 and 73.

46.     Defendants deny the allegations in paragraph 74, 75 and 76.

47.     Defendants deny the allegations in paragraph 77 as previously denied.

48.     Defendants deny the allegations in paragraphs 78, 79, 80, 81, 82, 83, 84 and 85.

49.     Defendants deny the allegations in paragraphs 86 as previously denied.

50.     Defendants deny the allegations in paragraph 87.

51.     Defendants admit that Ms. Hewitt inquired regarding her commissions, but deny the remainder of the allegations in paragraph 88.

52.     Defendants deny the allegations in paragraph 89 regarding the request to contact "these customers," but admit that customers had not paid their amount due to defendants.

53.     Defendants are without sufficient information to admit or deny the allegations in paragraphs 90 regarding which "customers" were contacted, and therefore, denies the same.

54.     Defendants admit the allegations of paragraph 91.

55.     Defendants deny the allegations of paragraph 92, 93, 94 and 95.

56.     Defendants deny the allegations in paragraph 96 as previously denied.

57.     Defendants deny that Ms. Hewitt was to receive a monthly commission for the life of the contract but admit the allegations in paragraph 97.

58.     Defendants deny the allegations in paragraph 98, 99, 100, 101 and 102.

59.     Defendants deny the allegations in paragraph 103 as previously denied.

60.     Defendants deny the allegations in paragraph 104, 105, 106 and 107.

Hewitt v. Allied Business Solutions
Case No. 2:19-cv-2012
**ANSWER AND COUNTERCLAIM**
Page 6
- - - - - - - - - - - - - - - - - - - - - - - -

61.     Defendants deny the allegation in paragraphs 108 as previously denied.

62.     Defendants admit the allegations in paragraph 109.

63.     Defendants deny the allegations in paragraphs 110, 111, 112, 113 and 114.

64.     Defendants deny the allegations in paragraph 115 as previously denied.

65.     Defendants admit the allegations in paragraph 116.

66.     Defendants collected revenue from customers as alleged in paragraph 117, and deny the remainder of the allegations in paragraph 117.

67.     Paragraph 118 is a legal conclusion, and therefore, defendants deny any allegations in paragraph 118.

68.     Defendants deny the allegations in paragraph 119.

69.     Defendants deny that sums are owed to Barbra Hewitt as alleged in plaintiff's petition and paragraph 120 is a legal conclusion, and therefore, defendants deny any allegations in paragraph 120.

WHEREFORE, the defendants pray that the plaintiff's cause of action and complaint against the defendants be denied and dismissed, that defendant receive compensation for their costs and attorney fees to defend this action, and for such other and further relief as the court deems just and equitable.

## AFFIRMATIVE DEFENSES

COMES NOW the defendants, and hereby plead the following affirmative defenses, to-wit:

70.     Defendants plead the affirmative defenses of accord and satisfaction, estoppel, failure of consideration, laches, payment, release, statute of frauds and waiver.

71.     Plaintiff's petition fails to state a claim upon which relief may be granted.

WHEREFORE, plaintiff's petition fails to state a claim upon which relief may be granted, the defendants pray that the plaintiff's cause of action and complaint against the defendants be denied and dismissed, that defendants receive compensation for their costs and attorney fees to defend this action, and for such other and further relief as the court deems just and equitable.

<u>COUNTERCLAIMS</u>

COMES NOW the defendant, Allied Business Solutions LLC ("ABS or "the company") and for its counterclaim against the plaintiff, Barbara Hewitt, hereby state and allege as follows, to-wit:

**COUNT I**
**BREACH OF CONTRACT**

72.     ABS is a corporation duly organized under the laws of the State of Kansas, with its principal place of business located in Gardner, Kansas.  ABS is duly registered to conduct business in the State of Kansas.

73.     ABS specializes in reducing the telecommunication expenses of its customers.  ABS's customers consist primarily of municipalities, schools, law firms, banks and other business located through Kansas and Missouri.

74.     ABS reviews and audits the invoices its customers receive from their telecommunications vendors for services such as internet, wide area network (WAN) serviced, local telephone, long distance, pagers and cellular phones to insure the customers to recommend measures to decrease the cost of such services and provides various other telecommunications consulting services.

75.     ABS enters into project and/or consulting agreement with it customers.  Project

Hewitt v. Allied Business Solutions
Case No. 2:19-cv-2012
**ANSWER AND COUNTERCLAIM**
Page 8
- - - - - - - - - - - - - - - - - - - - - - - -

agreements typically cover situations n which ABS consults or performs services for customers that are limited to a finite project, such as providing advice and information on a customer's purchase of a new telephone system.  Consulting agreements, in contrast, typically are for two to four years to audit and monitor the customer's telecommunications bills and services on an ongoing basis.

76.     ABS generally is paid a flat fee for project work and a portion of the savings recovered for its customers for its long term consulting work.

77.     ABS and Barbara Hewitt entered into an Independent Sales Representative Agreement ("Sales Agreement")  on or about March 4, 2013, attached to plaintiff's petition as Exhibit A.  This agreement was later modified with the "Sales Agreement" attached as Exhibit B.

78.     The agreement between ABS and Barbara Hewitt specifically stated she was an independent contractor, was not an employee of ABS, that she would determine when, where and how she shall perform her responsibilities and that ABS would not be liable for employment or withholding taxes regarding Barbara Hewitt's being an independent contractor.

79.     The agreement between ABS and Barbara Hewitt stated that they had a confidential relationship as it relates to ABS business, and that plaintiff had an obligation to not disclose certain proprietary information.

80.     Under the terms of the Agreement, Barbara Hewitt agreed that (1) she would not disclose, use or make known ABS's confidential information during or after her employment with ABS; and (2) she would not compete on behalf of herself or a competitor of ABS, either during or after her employment, for ABS's existing customers.

81.     The Agreement also provides, without any limitation on ABS's right to damages, that

Hewitt v. Allied Business Solutions
Case No. 2:19-cv-2012
**ANSWER AND COUNTERCLAIM**
Page 9
- - - - - - - - - - - - - - - - - - - - - - - -

ABS shall be entitled to injunctive relief for any breach or threatened breach of Barbara Hewitt's obligations under the Agreement, as well as costs and attorney fees ABS incurs in enforcing the terms of the Agreement.

82.     Barbara Hewitt had intimate knowledge of the procedures and methods ABS developed to audit and review telecommunications services.

83.     Pursuant to the Independent Sales Representative Agreement, Barbara Hewitt had a confidential relationship with ABS and there was an express understanding that the private and confidential information that Barbara Hewitt received, created or used in connection with ABS customers was confidential and not to be disclosed.

84.     Pursuant to the Independent Sales Representative Agreement, Barbara Hewitt had possession and access to ABS's confidential business information and trade secrets, including, among other things, details of all aspects of ABS's auditing and client servicing procedures, customers lists and confidential information about ABS's customers and their needs, as well as prospective customer information developed in ABS's marketing efforts.

85.     Barbara Hewitt acquired information by virtue of her employment with ABS which are trade secrets and confidential information which have substantial commercial value and are not readily accessible to ABS's competitors.

86.     Under the terms of her Agreement with ABS, Barbara Hewitt was obligated, among other things: 1) to refrain from disclosing ABS's trade secrets and confidential information; 2) to turn over all of ABS's confidential information and property upon the termination of sales agreement with ABS; and 3) not to compete for ABS's customers during or after her relationship with ABS's as a sales

Hewitt v. Allied Business Solutions
Case No. 2:19-cv-2012
**ANSWER AND COUNTERCLAIM**
Page 10
- - - - - - - - - - - - - - - - - - - - - - - -

representative.

87.     The Sales Agreement with ABS is reasonable and enforceable, in that it protects ABS's legitimate business interests, including, but not limited to, ABS's contracts with its customers, customer contracts and accounts, ABS's information about its existing and prospective customers, ABS's investments in training and educating its employees, and maintaining the secrecy of its trade secrets and confidential information.

88.     Barbara Hewitt breached her Sales Agreement with ABS by retaining ABS's confidential information at the termination of her contract, by disclosing and using ABS's confidential information and by competing for and soliciting ABS's customers on behalf of herself and/or another company.

89.     Barbara Hewitt breached her Sales Agreement with ABS by disclosing and using ABS's confidential information and by competing for or soliciting ABS's customers on behalf of herself and/or another company.

90.     Pursuant to the terms of the Sales Agreement, ABS is entitled to, among other things, injunctive relief ordering Barbara Hewitt to comply with the terms of the Sales Agreement.

91.     Barbara Hewitt's breach of her Sales Agreement with ABS has caused ABS to suffer harm and, unless enjoined, her breach of the agreement will continue to harm ABS.

92.     Barbara Hewitt's breach of her Sales Agreement with ABS has damaged ABS in excess of $75,000.00.

WHEREFORE, plaintiff ABS prays the Court enter judgment in its favor; that the Court enter a temporary restraining order ("TRO") and/or temporary injunction and a permanent injunction

Hewitt v. Allied Business Solutions
Case No. 2:19-cv-2012
**ANSWER AND COUNTERCLAIM**
Page 11
- - - - - - - - - - - - - - - - - - - - - - - - -

against Barbara Hewitt continued breach of her Sales Agreement with ABS and order her to undertake the obligations required of her under the Sales Agreement; that the Court award damages to ABS in excess of $75,000.00, including ABS's costs and attorney fees incurred in this action; and for such other and further relief as the Court deems just and equitable.

## COUNT II
### MISAPPROPRIATION OF TRADE SECRETS

93.    The allegations in paragraphs 71 through 91 above are incorporated as though fully set out herein.

94.    ABS has trade secrets and confidential information, including, but not limited to, procedures and guidelines that ABS uses to maximize the cost-savings to its customers, technical data regarding telecommunications systems, marketing programs, profit margins, pricing information, and customer data that derive independent economic value from not being generally known to, or readily ascertainable by other persons who can obtain economic value from its disclosure or use, which is vital to maintain it secrecy.

95.    Due to her position with ABS, Barbara Hewitt had access to and use of ABS's trade secrets and confidential information.

96.    Barbara Hewitt retained ABS's trade secrets and confidential information when she resigned from ABS and presently is using that information to the benefit of herself to the detriment of ABS.

97.    The trade secrets and confidential information in the possession Barbara Hewitt are not known to the public or competitors of ABS, and it is not obtainable from other sources.

98.    The Kansas Uniform Trade Secrets Act, K.S.A. 60-3320, *et seq.,* provides that "actual

Hewitt v. Allied Business Solutions
Case No. 2:19-cv-2012
**ANSWER AND COUNTERCLAIM**
Page 12
- - - - - - - - - - - - - - - - - - - - - - - -

or threatened misappropriation (of trade secrets) may be enjoined; "that a "complainant is entitle to recover damages for misappropriation;" that under appropriate circumstances 'the court may award exemplary damages;" and that 'affirmative acts to protect a trade secret may be compelled by court order."

99.     Unless Barbara Hewitt is ordered to return all of ABS's trade secrets and confidential information and cease any use or disclosure thereof, there is a substantial likelihood that ABS will be irreparably injured through the deprivation of its property and the use and disclosure of its trade secrets.

WHEREFORE, defendant ABS requests that this Court enter judgment in its favor; that the Court order a TRO and/or temporary injunction and a permanent injunction against Barbara Hewitt preventing her from misappropriating any of ABS's trade secrets or confidential information; that the Court order the immediate return of any trade secrets and property of ABS; that the Court award compensatory damages as a result of Barbara Hewitt misappropriation, including both the actual losses caused by the misappropriation and the unjust enrichment caused by the misappropriation in excess of $75,000.00; and that the Court award plaintiff ABS its costs incurred in this action; including reasonable attorneys' fees; and such further relief as the Court deems just and equitable.

## COUNT III
## BREACH OF DUTY OF LOYALTY

100.     The allegations contained in paragraph 71 through 98 are incorporated as though fully set out herein.

101.     Barbara Hewitt had a confidential relationship with ABS and there was an express understanding that Barbara Hewitt was receiving confidential information, and she acquired the

Hewitt v. Allied Business Solutions
Case No. 2:19-cv-2012
**ANSWER AND COUNTERCLAIM**
Page 13
- - - - - - - - - - - - - - - - - - - - - - - -

information in such a way that she knew or must have known of its confidential nature.

102.    Barbara Hewitt owed a duty of loyalty to ABS not to compete with the company or usurp its business opportunities during her contract with ABS, and further owned a duty of loyalty to ABS prohibiting her from taking or using ABS's trade secrets and confidential information to compete with ABS after the termination of her contract.

103.    Barbara Hewitt breached her duty of loyalty to ABS by disclosing information and working with a competitor of ABS to acquire contracts of a similar nature as those with ABS.

104.    Barbara Hewitt's breach of her duty of loyalty to ABS has caused the company to suffer damages in excess of $75,000.00.

WHEREFORE, defendant ABS request that the Court enter judgment in its favor; that the Court enter a TRO and/or temporary injunction and a permanent injunction against Barbara Hewitt preventing her from continuing to breach her duties of loyalty to the company; that the Court award compensatory damages as a result of Barbara Hewitt's breaches of her duty of loyalty in excess of $75,000.00; and that the Court award ABS its costs incurred in this action, including reasonable attorneys' fees; and for such other and further relief as the Court deems just and equitable.

R. Scott Ryburn, #12690
**ANDERSON & BYRD, LLP**
216 S. Hickory, P. O. Box 17
Ottawa, Kansas  66067
(785) 242-1234, telephone
(785) 242-1279, facsimile
sryburn@andersonbyrd.com
Attorneys for Defendants

Hewitt v. Allied Business Solutions
Case No. 2:19-cv-2012
**ANSWER AND COUNTERCLAIM**
Page 14
- - - - - - - - - - - - - - - - - - - - - - - - -

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing was sent via electronic mail, this 5th day of March, 2019, addressed to:

Virginia Stevens Crimmins
Crimmins Law Firm LLC
214 S. Spring Street
Independence, MO 64050
v.crimmins@crimminslawfirm.com


R. Scott Ryburn

# Allied Business Solutions, LLC
## Independent Sales Representative Agreement

**THIS AGREEMENT** (the "Agreement") is made and entered into on *3/4/13* DATE   and among Allied Business Solutions, LLC., having its principal place of business at 314 East Main Street Gardner, KS 66030 (collectively referred to as "Allied"), and: *Barbara Hewitt*   having its principal place of business at *7228 Widmer Shawnee, KS 66216* (hereinafter referred to as "Representative").

WHEREAS, Allied is in the business of providing a variety of consulting services to its customers and wishes to retain Representative to secure new customers for its services;

NOW THEREFORE, in consideration of the mutual covenants and promises made herein, the parties agree as follows:

## 1. TERMS AND TERMINATION

1.1 <u>Term of Agreement</u>. The term of this Agreement shall be for a period of one (1) year from the date an authorized ABS executive accepts this Agreement. After the end of this one-year period, this Agreement shall remain in force and effect on a month-to-month basis unless and until terminated by either party upon 30 days prior written notice to the other party. Commissions shall continue for the life of the client unless termination is for cause per section 1.3.

1.2 <u>Termination Without Cause</u>. Either Party may terminate this Agreement at any time during the term of this Agreement, without cause, upon thirty (30) days written notice. Except as set forth below, upon termination of the Agreement by ABS without cause, neither party shall be liable to the other for damages of any kind or character whatsoever arising from such termination. The foregoing notwithstanding, in the event ABS terminates this Agreement without cause pursuant to this Section 1.2, Representative shall continue to receive commissions pursuant to this Agreement on any sales that Representative has made prior to said termination for the unextended term of this Agreement provided in paragraph 1.1.

1.3 <u>Termination for Cause</u>. ABS may terminate this Agreement immediately upon written notice to the Representative in the event that:

    (a)    Representative makes (or is discovered to have made) any material false representations, reports, or claims in connection with this Agreement or the Products or Services of ABS; or

    (b)    Representative engages in fraud, criminal or negligent conduct in connection with the business relationship of the parties; or

    (c)    Representative breaches any material provision of this Agreement; or

    (d)    Representative attempts to assign this Agreement or any of Representative's duties under this Agreement to another party without prior written consent.

In the event ABS terminates this Agreement for cause pursuant to this Section 1.3, ABS's obligations to pay Representative commissions shall immediately cease, except with respect to any commissions due and payable prior to said termination.

## 2. COMPENSATION

ABS shall pay Representative a commission (the "Commission") as described on **Exhibit A** attached hereto and by this reference incorporated herein. The Commission shall be payable to Representative only after the Consulting Service has been accepted by Customer. Commission shall be paid on the net revenues collected

Confidential             Page     Allied initials _N_   representative initials _BH_

1



by ABS from the customer, provided, however, no Commission payment shall be made to Representative until such amount exceeds Two hundred-fifty dollars ($250.00).

## 3.   **ALLIED BUSINESS SOLUTIONS DEALINGS WITH CUSTOMERS**

ABS will deal directly with customers in all matters relating to the provision of auditing service.

## 4.   **REPRESENTATIVE RESPONSIBILITIES**

4.1   Marketing.   Representative shall use good faith efforts to diligently market ABS Services. Said marketing shall be consistent with and subject to Allied's terms and conditions. Representative may not offer any terms or conditions on behalf of Allied which conflict current business model.

4.2   Representative's Conduct.   Representative shall be governed in all dealings with such customers by the highest standards of honesty, integrity and fair dealing, including compliance with all applicable laws, ordinances and regulations, and shall do nothing which would tend to discredit, dishonor, reflect adversely upon, or in any manner injure the reputation of ABS or services covered by this Agreement and the quality image associated with said ABS services.

## 5.   **Allied RESPONSIBILITIES**

5.1   Promotional Materials   ABS shall provide Representative with an initial Allied standard starter kit consisting of materials for marketing purposes which are subject to the provisions of the Confidentiality and Non-Disclosure provision as set forth in this Agreement.

5.2   Training.   Allied shall provide training at reasonable times and places, and at no fee to Representative, to acquaint Representative with Allied service offerings and procedures. Allied will attend appointments, conference calls or Webex Sales presentations with prospects scheduled by the Representative.

## 6.   **CONFIDENTIALITY**

Representative acknowledges that this Agreement creates a relationship of confidence and trust with respect to all information of a confidential, proprietary or trade secret nature disclosed by or on behalf of ABS to Representative that relates to the business of ABS, its affiliates, customers, suppliers and vendors (the "Proprietary Information"). Such Proprietary Information includes, but is not limited to:

(a)   technical information, including without limitation, techniques, new ideas, discoveries, inventions, developments, know-how and trade secrets (whether developed by Allied, an affiliate, employee or Representative); and

(b)   business information, including without limitation, information relating to costs, pricing, profit margins, markets and suppliers, business plans and projections, financial accounting, legal and regulatory data, names, addresses and telephone numbers of current or prospective customers and their respective service or product requirements, credit histories and trade names, sales, marketing and advertising plans, and other commercial information;

(c)   technical and/or business information furnished by third parties to Allied, including prospects, customers, suppliers, and vendors; and

(d)   the terms and conditions, including the commission structure, of this Agreement.

At all times during and after the term of this Agreement, Representative shall keep all Proprietary Information in confidence and shall not disclose such Proprietary Information to anyone or directly or indirectly use any of such Proprietary Information for Representative's own benefit or for the benefit of any person or entity other than Allied. Upon any termination of this Agreement, or upon the request of Allied, Representative shall promptly deliver to Allied all Proprietary Information, and Representative shall not retain any documents or materials or copies thereof containing any

Confidential                                    Page          **Allied initials** $\overline{\Lambda}$ representative initials

3/2002

Proprietary Information. Representative represents that performance of all the terms of this Agreement and Representative's duties as a Representative of Allied will not breach any similar commitment or proprietary information agreement with any former employer or other party.

Representative represents that it will not bring to Allied or use in the performance of Representative's duties for ABS any documents or materials of a former employer or other entity that are so restricted. Representative agrees that in the event of a breach of the confidentiality provisions of this Agreement by Representative, Allied may suffer irreparable harm and will therefore be entitled to injunctive relief to enforce this Agreement without the need to post bond and that such relief shall be in addition to, and not in lieu of, any monetary damages or such other relief a court of law may award.

## 7.   **PROHIBITED CUSTOMER AND EMPLOYEE CONTACTS**

At all times during the term of this Agreement and for as long as Allied is paying Representative any Commission, Representative agrees that it shall not, whether on its own account or for the account of any other person or entity:

(a)   contact customers of Allied whom Representative obtained for Allied during the term of this Agreement ("Relevant Customers") for the purpose of soliciting or inducing them to terminate their business relationship with Allied; and

(b)   contact employees of Allied with whom Representative worked or related during the term hereof for the purpose of encouraging or inducing them to terminate their employment with Allied. Allied agrees that so long as Representative is bound by and in compliance with this paragraph 9(b), Allied shall not contact employees of Representative with whom Allied has worked or related during the term hereof for the purpose of encouraging or inducing them to terminate their employment with Representative.

Nothing in this Agreement shall be construed to prohibit Representative from providing to Relevant Customers information available in the industry regarding the communications services or products offered by other companies.

## 8.   **INDEMNIFICATION**

Representative shall indemnify and hold harmless Allied and its officers, directors, agents and employees, from and against any and all claims, demands, causes of action, losses, damages, costs and expenses (including reasonable attorney fees) (hereinafter "Claims") arising out of or relating to:

(a)   Representative's breach of any of the terms of this Agreement;

(b)   Representative's misrepresentation regarding the terms and provisions of Allied's services to customers, including any action of Representative in which Representative falsely represents that Representative has authority to bind Allied;

(c)   Representative's activities relating to the marketing of the services to Allied customers;

Allied shall indemnify and hold harmless Representative and its officers, directors, agents and employees, from and against any and all claims, demands, causes of action, losses, damages, costs and expenses (including reasonable attorney fees) (hereinafter "Claims") arising out of or relating to:

(a)   Allied's breach of any of the terms of this Agreement;

Allied may withhold payment of Commissions due Representative under this Agreement in order to recover expenses for Claims covered by this section.

Allied shall indemnify and hold harmless Representative from and against any and all Claims arising out of or relating to:

Confidential                                    Page          Allied initials _____ representative initials _____

3

3/2002

    (a)    Allied's breach of any of the terms of this Agreement; and

    (b)    Allied's misrepresentation regarding the terms and provisions of Allied's services to customers.

## 9.    ALLIED PROPERTY

Nothing contained in this Agreement shall be construed as granting or conferring any rights to Representative by license, franchise, title or interest in Allied or any property of Allied, including, without limitation, Allied trade names, trademarks, service marks or proprietary information. Representative may, however, with Allied's prior written consent, use trade names owned by Allied in connection with its efforts under this Agreement.

## 10.    GENERAL PROVISIONS

10.1    Construction and Interpretation. This Agreement shall be governed and constructed by the laws of the State of Kansas. In the event that any action is brought by either party to enforce any term or condition of this Agreement, the prevailing party shall be entitled to recover its actual legal cost, including attorney's fees, court costs and costs of collection, in addition to whatever other relief a court may award.

To Representative:
Barbara Hewitt
7228 Widmer
Shawnee, Ks 66216

To: Allied Business Solutions
    P.O. Box 246
    314 E. Main Street
    Gardner, KS 66030
    Attn: Marketing Director

Confidential          Page    Allied initials ___ representative initials ___

3/2002

10.2.   Independent Contractor.   Representative and Allied, expressly intending that no employment, partnership, or joint venture relationship is created by this Agreement, hereby agree as follows:

    (i)    Representative shall act at all times as an independent contractor hereunder.

    (ii)    Neither Representative nor anyone employed by or acting for or on behalf of Representative shall ever be or be construed, as an employee of Allied and Allied shall not be liable for employment or withholding taxes respecting Representative or any employee of Representative.

    (iii)    Representative shall determine when, where and how Representative shall perform its responsibilities hereunder.

    (iv)    Representative shall take all steps to ensure that Representative and Representative's employees are treated as independent contractors of Allied.

IN WITNESS WHEREOF, Allied Business Solutions and Representative represent that they have read this Agreement, understand it and agree to be bound by all the terms and conditions stated herein.

BY: _____    DATE: 3 / 4 / 13
    ("Representative's Signature")

PRINTED
NAME: Barbara Hewitt    Title: _____

FED TAX ID/SS #: _____

COMPANY TYPE: Sole Prop. ___ X ___ LTD Partner _____ Partner _____ Corp. _____

BUSINESS PHONE: 913 - 526 - 9578    FAX #: 913 - 322 - 0928


**Allied Business Solutions**

DATE:    March 4, 2013

NAME:    Larry Alsup

TITLE:    President

Allied initials ____ representative initials ____

3/2002

## EXHIBIT A -1
## ALLIED BUSINESS SOLUTIONS
## COMPENSATION STRUCTURE

**Commission on Revenue:**
Contingency revenue commissions will be paid to Representative at a 20% rate of collected revenue per month for a period of 24, 36, or 48 months (based upon signed contracted term).

*Barbara Hewitt*                will be compensated 20% monthly commissions on all collected
**("Representative's Printed Name")**
revenue per month for the term of the contract between customer and Allied Business Solutions.

### For example:

Allied can save customers up to 20% however on the conservative side 10% is used.

Agent receives 20% of the savings due Allied for the term of the contract between the customer and Allied

### For example:

Allied finds $10,000.00 in savings and invoices customer $5,000.00 which is 50% of the savings.

Agent receives 20% of the $5,000.00 which is $1000.00 each month times 24 months (per the term of the contract) = $24,000.00 per customer.

Projects and recoveries will be paid in a one-time commission up to 20% of collected revenue based on monthly commissioned earned as stated above.

**Charge-back Schedule:**
Due to certain circumstances it could be necessary to charge back a portion of the commission paid.

For example: if customer does not pay an item to Allied, agent will not be paid on that specific item.

Confidential                    Page            Allied initials ___ representative initials ___

6

3/2002

# Allied Business Solutions, LLC
## Independent Sales Representative Agreement

**THIS AGREEMENT** (the "Agreement") is made and entered into on _____ and among Allied Business Solutions, LLC, a Kansas limited liability company, having its primary place of business at 314 East Main Street, Gardner, KS 66030 (collectively referred to as "Allied"), and _____ having its primary place of business at _____ (hereinafter referred to as "Representative").

WHEREAS, Allied is in the business of providing a variety of communications consulting/auditing services to its clients and wishes to retain Representative to secure new clients for its services;

WHEREAS, Representative desires to provide such services and has professional expertise in the sale and marketing of communications services;

NOW THEREFORE, in consideration of the mutual covenants and promises made herein, the parties agree as follows:

## 1. TERMS AND TERMINATION

1.1 <u>Term of Agreement</u>. The term of this Agreement shall be for a period of one (1) year from the date signed. After the end of this one-year period, this Agreement shall remain in force and effect on a month-to-month basis unless and until terminated by either party upon thirty (30) days prior written notice to the other party.

1.2 <u>Termination Without Cause</u>. Either Party may terminate this Agreement at any time during the term of this Agreement, without cause, upon thirty (30) days written notice. In the event Allied terminates this Agreement without cause pursuant to this Section 1.2, Representative shall continue to receive commission pursuant to this Agreement on any original audit recommendation of any sale that Representative has made and is being invoiced by Allied prior to said termination for the term of this Agreement provided in paragraph 1.1.

1.3 <u>Termination for Cause</u>. Allied may terminate this Agreement immediately upon written notice to the Representative in the event:

    (a) Representative makes (or is discovered to have made) any material false representations, reports, or claims in connection with this Agreement, the services of Allied or any agents, clients, members or employees of Allied; or

    (b) Representative engages in fraud, criminal or negligent conduct in general or in connection with the business relationship of the parties; or

    (c) Representative breaches any material provision of this Agreement; or

    (d) Representative attempts to assign this Agreement or any of Representative's duties under this Agreement to another party without prior written consent.

In the event Allied terminates this Agreement for cause pursuant to this Section 1.3, Allied's obligations to pay Representative any and all commission shall immediately cease.

Allied _____ Representative _____

EXHIBIT B

**2.**   **COMPENSATION**

2.1    Contingency Revenue Commission. Allied shall pay Representative a commission on Contingency revenue at a rate stated below of collected revenue per month for original audit recommendations for a period of 24, 36, or 48 months (based upon signed contracted term).

0 to $2,000.00 monthly commission received   10%

$2,001.00 and above monthly commission received   20%

The commission shall be payable to Representative only after the audit recommendation has been accepted by and savings recognized by the client. Commission shall be paid on the net revenues collected by Allied from the client, provided, however, no commission payment shall be made to Representative until such amount exceeds two hundred-fifty dollars ($250.00). Commission shall only be paid on original audit recommendations unless Representative is directly involved with additional sales to client of Allied services.

2.2    Project and Recovery Revenue Commission. Allied shall pay Representative a one-time commission on Project and Recovery revenue based on earnings stated above of collected revenue for original audit recommendations based upon signed contracted term.

2.3    Non-Payment of Invoices. Representative should understand they will receive commission based on original audit recommendations accepted by the client provided the client is making regular payments on invoicing by Allied. If the client stops making payments, the Representative understands that the Representative may be "charged back" for commissions paid where a client has not made proper payment to Allied. In cases of charge backs, Allied will provide proper support documentation to the Representative. If client refuses to make payment and causes Allied to seek legal representation for collection, all commission to Representative cease.

2.4    Allied shall have the right to modify the commission structure due to Representative's lack of performance effective thirty (30) days following written notice of the same by Allied to Representative.

**3.**   **REPRESENTATIVE RESPONSIBILITIES**

3.1    Marketing. Representative shall use good faith efforts to diligently market Allied services. Said marketing shall be consistent with and subject to Allied's terms and conditions. Representative may not offer any terms or conditions on behalf of Allied which conflict current business model.

3.2    Sales/Volume Requirements. Representative shall achieve the sales volume requirements equivalent to one new audit per quarter. If after one (1) quarter no new audits have been brought in, the Agreement is voidable, and the Representative shall meet with the manager to review the Agent Agreement to discuss whether or not the Agreement should continue.

3.3    Representative's Conduct. Representative shall be governed in all dealings with such clients by the highest standards of honesty, integrity and fair dealing, including compliance with all applicable laws, ordinances and regulations, and shall do nothing which would tend to discredit, dishonor, reflect adversely upon, or in any manner injure the reputation of Allied or services covered by this Agreement and the quality image associated with said Allied services.

3.4    Client Signatures. Representative shall be responsible for obtaining authorized signatures or client consent through Allied approved authorization methods. Representative shall be responsible for collecting all invoices/bills for audit as expressed in the Audit Prerequisite Form.

Allied _____ Representative _____

**4.      ALLIED RESPONSIBILITIES**

4.1      <u>Promotional Materials</u>.   Allied shall provide Representative with an initial Allied standard starter kit consisting of materials for marketing purposes which are subject to the provisions of the Confidentiality and Non-Disclosure provision as set forth in this Agreement.

4.2      <u>Training</u>.   Allied shall provide training at reasonable times and at no fee to Representative, to acquaint Representative with Allied's service offerings and procedures.

**5.      CONFIDENTIALITY**

Representative acknowledges that this Agreement creates a relationship of confidence and trust with respect to all information of a confidential, proprietary or trade secret nature disclosed by or on behalf of Allied to Representative that relates to the business of Allied, its affiliates, clients, suppliers and vendors (the "Proprietary Information").  Such Proprietary Information includes, but is not limited to:

(a)      technical information, including without limitation, techniques, new ideas, discoveries, inventions, developments, know-how and trade secrets (whether developed by Allied, an affiliate, employee or Representative); and

(b)      business information, including without limitation, information relating to costs, pricing, profit margins, markets and suppliers, business plans and projections, financial accounting, legal and regulatory data, names, addresses and telephone numbers of current or prospective clients and their respective service or product requirements, credit histories and trade names, sales, marketing and advertising plans, and other commercial information;

(c)      technical and/or business information furnished by third parties to Allied, including prospects, clients, suppliers, and vendors; and

(d)      the terms and conditions, including the commission structure, of this Agreement.

At all times during and after the term of this Agreement, Representative shall keep all Proprietary Information in confidence and shall not disclose such Proprietary Information to anyone or directly or indirectly use any of such Proprietary Information for Representative's own benefit or for the benefit of any person or entity other than Allied. Upon any termination of this Agreement, or upon the request of Allied, Representative shall promptly deliver to Allied all Proprietary Information, and Representative shall not retain any documents or materials or copies thereof containing any Proprietary Information. Representative represents that performance of all the terms of this Agreement and Representative's duties as a Representative of Allied will not breach any similar commitment or proprietary information agreement with any former employer or other party.

Representative represents that it will not bring to Allied or use in the performance of Representative's duties for Allied any documents or materials of a former employer or other entity that are so restricted. Representative agrees to not engage in the performance of like and similar services for themselves or a competitor, currently known or unknown, on existing or prospective clients of Allied for a period of three (3) years.  Representative agrees that in the event of a breach of the confidentiality provisions of this Agreement by Representative, Allied may suffer irreparable harm and will therefore be entitled to injunctive relief to enforce this Agreement without the need to post bond and that such relief shall be in addition to, and not in lieu of, any monetary damages or such other relief a court of law may award.

Allied _____ Representative _____

## 6.     PROHIBITED CLIENT AND EMPLOYEE CONTACT

At all times during the term of this Agreement and for as long as Allied is paying Representative any commission, Representative agrees that it shall not, whether on its own account or for the account of any other person or entity:

(a)     contact clients of Allied whom Representative obtained for Allied during the term of this Agreement ("Relevant Clients") for the purpose of soliciting or inducing them to terminate their business relationship with Allied; and

(b)     contact employees of Allied with whom Representative worked or related during the term hereof for the purpose of encouraging or inducing them to terminate their employment with Allied. Allied agrees that so long as Representative is bound by and in compliance with this paragraph 6(b), Allied shall not contact employees of Representative with whom Allied has worked or related during the term hereof for the purpose of encouraging or inducing them to terminate their employment with Representative.

## 7.     INDEMNIFICATION

Representative shall indemnify and hold harmless Allied and its officers, directors, agents and employees, from and against any and all claims, demands, causes of action, losses, damages, costs and expenses (including reasonable attorney fees) (hereinafter "Claims") arising out of or relating to:

(a)     Representative's breach of any of the terms of this Agreement;

(b)     Representative's misrepresentation regarding the terms and provisions of Allied's services to clients, including any action of Representative in which Representative falsely represents that Representative has authority to bind Allied;

(c)     Representative's activities relating to the marketing of the services to Allied clients;

## 8.     ALLIED PROPERTY

Nothing contained in this Agreement shall be construed as granting or conferring any rights to Representative by license, franchise, title or interest in Allied or any property of Allied, including, without limitation, Allied trade names, trademarks, service marks or proprietary information. Representative may, however, with Allied's prior written consent, use trade names owned by Allied in connection with its efforts under this Agreement.

## 9.     GENERAL PROVISIONS

9.1     Construction and Interpretation. This Agreement shall be governed and constructed by the laws of the State of Kansas. In the event that any action is brought by either party to enforce any term or condition of this Agreement, the prevailing party shall be entitled to recover its actual legal cost, including attorney's fees, court costs and costs of collection, in addition to whatever other relief a court may award.

9.2.     Independent Sales Agent. Representative and Allied, expressly intending that no employment, partnership, or joint venture relationship is created by this Agreement, hereby agree as follows:

(a)     Representative shall act at all times as an independent agent hereunder.

(b)     Neither Representative nor anyone employed by or acting for or on behalf of Representative shall ever be or be construed, as an employee of Allied and Allied

Allied _____ Representative _____

4

shall not be liable for employment or withholding taxes respecting Representative or any employee of Representative.

(c) Representative shall determine when, where and how Representative shall perform its responsibilities hereunder.

(d) Representative shall take all steps to ensure that Representative and Representative's employees are treated as independent agents of Allied.

IN WITNESS WHEREOF, Allied and Representative represent that they have read this Agreement, understand it and agree to be bound by all the terms and conditions stated herein.

BY: _____   DATE: _____ / _____ / _____
    **("Representative's Signature")**

NAME (Printed): _____   TITLE: _____

FED TAX ID/SS#: _____

COMPANY TYPE: Sole Prop. _____ LLC _____ Partner _____ Corp. _____

BUSINESS PHONE: _____   FAX: _____

**ALLIED BUSINESS SOLUTIONS, LLC**

DATE:    October 2, 2018

NAME:    Larry S. Alsup

_____   DATE: _____ / _____ /_____

TITLE:    President

Allied _____ Representative _____

5